[L. A. No. 7666. In Bank.—May 21, 1924.]

In the Matter of the Estate of JOHN ROLLS, Deceased. JAMES ROLLS et al., Appellants, v. W. F. ALLEN, as Executor, et al., Respondents.

[1] HUSBAND AND WIFE—PROPERTY ACQUIRED AFTER MARRIAGE—PRESUMPTION OF WIFE'S COMMUNITY INTEREST IN—EVIDENCE.—The presumption of the wife's community interest in property acquired after marriage can be overcome only by the production of clear and satisfactory proof that the property in question was the separate property of the husband.

[2] ID.—CHARACTER OF PROPERTY ACQUIRED BY HUSBAND—FINDING—EVIDENCE.—In a proceeding involving the question whether the estate acquired after marriage and left by a husband was his separate property or community property, the finding of the trial court that the entire estate was community property must be sustained on appeal, where the proof directed to this issue was not sufficient to produce conviction in an unprejudiced mind that the property of which the husband died seised was acquired by him as his separate estate.

[3] WILLS—CONJOINT WILL BY HUSBAND AND WIFE—CONTRACT NOT TO CHANGE DISPOSITION OF PROPERTY—ENFORCEMENT OF—EQUITY. The question that a wife, who made a conjoint will with her deceased husband, contracted with him during his lifetime not to execute a will that would in anywise change the disposition of the property made by the conjoint will cannot be litigated in a probate court, but relief based on such contract must be sought in a court of equity.

[4] ID.—TESTAMENTARY DISPOSITION IN VIOLATION OF CONTRACT—REMEDIES—EQUITY—JURISDICTION.—The remedy of a person injured by the violation of a contract to make testamentary provision for another must be pursued in a court of equity and not in a court of justice. Courts of equity will interfere in the administration of estates where the powers of the courts of probate and their modes of procedure preclude them from doing complete justice and then only for the purpose of rendering indispensable aid to courts of probate, remitting their decrees to that court to be carried into effect.

[5] ID.—CONJOINT WILL—REVOCATION—NOTICE.—Whoever enters into a contract with another to execute a conjoint or mutual will does

4. Specific performance of contract to make will, notes, **Ann. Cas.** 1914A, 399; **Ann. Cas.** 1918A, 1191.

5. Right to revoke joint or mutual will, notes, 38 **L. R. A.** 291; 27 **L. R. A. (N. S.)** 508; 37 **L. R. A. (N. S.)** 1196.

so with notice given by the statute itself that such a will is subject to revocation.

[6] ID.—CONJOINT WILL—REVOCATION—EQUITY.—Joint dispositions of property under a testamentary instrument are, though irrevocable in equity as a compact, revocable as a will by either testator in the usual manner so far as relates to his own disposition.

APPEAL from a decree of the Superior Court of Los Angeles County of final distribution. William D. Dehy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Bowker & Sheridan for Appellants.

Lawrence W. Allen and Ellis Eagan for Respondents.

SEAWELL, J.—Section 1279 of the Civil Code of this state provides: "A conjoint or mutual will is valid, but it may be revoked by any of the testators, in like manner with any other will." On April 16, 1919, John Rolls and Leah Rolls, husband and wife, residents of the city of Los Angeles, pursuant to the foregoing provision of the Civil Code, executed a conjoint and mutual will. The husband, being then ill, was taken to a hospital, where he died on the next day, following, as intimated, a surgical operation, at the age of seventy-two years. He left surviving him four children, the issue of a former marriage. On November 6, 1920, after the death of her husband, Leah Rolls executed a separate will and revoked as to herself said conjoint will. By the later will she made a different disposition of the estate described and referred to in said conjoint will than that made by said conjoint will. This act left the conjoint and mutual will as the separate will of her husband. Leah Rolls died on the eleventh day of April, 1921. Two daughters, the issue of herself and a former husband, survived her. No steps were taken to probate the estate of John Rolls, deceased, until after the death of his wife, to wit, April 14, 1921, on which day a petition for the probate of the conjoint will as the separate will of John Rolls, deceased, was filed. Letters testamentary were issued May 2, 1921. Upon the hearing of the petition for a decree of final distribution in the matter of his estate the court found, over the contest of

appellants, that all of the property of the said estate was the community property of John Rolls and his wife, Leah Rolls, and that the will executed by the wife on November 6, 1920, had revoked said conjoint and mutual will as to said Leah Rolls. By the decree of distribution one-half of the property was ordered distributed in accordance with the terms of said conjoint will as the will of John Rolls, subject to the payment of certain legacies to the persons named therein, together with certain claims and expenses of administration, and the remaining one-half of said estate was decreed to be the community interest of Leah Rolls, subject to her testamentary disposition.

The appeal is taken from that portion of the decree of final distribution which finds that all of the property belonging to the estate of John Rolls was community property and that the conjoint and mutual will, executed April 16, 1919, was revocable at any time thereafter by either of the makers. By these findings the strength of appellants' appeal must be tested. Two other grounds are stated, but they are necessarily included in a consideration of the other grounds and do not require special notice.

John Rolls and Leah Rolls intermarried in Newfoundland in 1889. John Rolls was then and previously thereto had been engaged in conducting a general merchandise business, first at Rose Blanche and later at Grand River, Newfoundland, and his wife Leah was, at the time of said marriage, and previously thereto, had been engaged in conducting a private boarding-house at St. John's. At the time of this marriage John Rolls was the father of eight children, the issue of his marriage with Emily Lucretia Rolls, who died in 1887. The eldest of these children at the time of said marriage of John Rolls and Leah was seventeen years of age and the youngest was not more than five years of age. All of said children, except those named in the will thereafter set out, died without issue. Those named in said will survived John Rolls. Leah Rolls was then the mother of two children, Maude Agnes Prouse and Sarah Dicks, the issue of herself and a former husband. No children were born as the issue of the marriage of John Rolls and Leah Rolls. In 1891, two years after their marriage, Rolls and his wife, accompanied by all of his children, became residents of the state of California, first locating at Santa Paula, Ventura

County. The children of Leah Rolls remained in New-foundland. Both John Rolls and his wife remained residents of California for a period of thirty years, residing at Santa Paula for a period of about twenty years, later at Merced, and finally making their home at Los Angeles, where both died. The children of John Rolls seemed to have made their home with the father and stepmother. There is nothing before us to indicate that there was anything of a discordant nature that occurred during their marriage relations which disturbed domestic tranquillity.

Shortly after his arrival at Santa Paula in 1891 John Rolls negotiated for and purchased a tract of land situate near Santa Paula, containing about forty-six acres, at the price of $7,500. This purchase seems to have been the foundation of his estate which, in 1922, was inventoried to be of the value of about $23,660. He paid down on the purchase price $4,300 and gave back a mortgage for the balance—$3,200. Of the cash payment, amounting to $4,300, his brother, William Rolls, furnished $2,500, leaving but $1,800 as furnished by John Rolls, deceased. No evidence of sufficient strength was adduced at the trial to overcome the presumption created by section 164 of the Civil Code, that all property acquired after marriage by either husband or wife, except such property as may be acquired in accordance with the provisions of the two preceding sections (secs. 162, 163) of said Civil Code, is community property. [1] The presumption of the wife's community interest in property acquired after marriage can be overcome only by the production of clear and satisfactory proof that the property in question was the separate property of the husband. (*Meyer* v. *Kinzer*, 12 Cal. 251 [73 Am. Dec. 538]; *Morgan* v. *Lones*, 78 Cal. 58 [20 Pac. 248]; *Dimmick* v. *Dimmick*, 95 Cal. 326 [30 Pac. 547]; *Jordan* v. *Fay*, 98 Cal. 264 [33 Pac. 95]; *Davis* v. *Green*, 122 Cal. 364 [55 Pac. 9]; *Rowe* v. *Hibernia Sav. & Loan Soc.*, 134 Cal. 403 [66 Pac. 569].) No such proof was produced at the trial below. Both spouses had been engaged in business before marriage. The evidence is very convincing to the effect that John Rolls, upon arriving in California with his wife and large family of young children, was not able to raise more than $1,800 in cash. The source from which that sum came or the manner in which it was acquired, is unexplained. There is no pre-

sumption that John Rolls had been more thrifty or sagacious in business than his wife had been. In fact, there is substantial evidence from which the inference must be drawn that he was financially weak at the time he moved from Newfoundland to California. [2] The proof directed to this issue is not sufficient to produce conviction in an unprejudiced mind that the property of which John Rolls died seised was acquired by him as his separate estate. The finding of the trial court as to this issue must, therefore, be sustained. The *Estate of Nickson,* 187 Cal. 603 [203 Pac. 106], cited by appellant, is not an authority out of agreement with our conclusion in the instant case. The facts of that case are altogether different from those disclosed by the record now before us. The law, as there stated, may as well be invoked in affirmance of the instant case.

This brings us to a consideration of the question whether either of two testators who have united in a conjoint and mutual will may, after the death of the other, and after having accepted the benefits conferred by said conjoint will, revoke the same as to the survivor. The portions of the will material to this issue are as follows:

"Second: Our joint estate consists of a mortgage of seventeen thousand dollars ($17,000) on a ranch formerly owned by us at Santa Paula, California, and at present the property of J. G. Leavens. The property now occupied by us, known as 5343 Santa Monica boulevard, Los Angeles. Eighty-five hundred (8500) shares of the capital stock of the Ben Ezra Mining Company of Nevada. And whatever money, either in our separate or joint accounts, in any bank at the present time.

"Third: The above property, both real and personal, at the time of the death of either of us, shall be held by the survivor during his or her lifetime, the use and income thereof to be enjoyed by such survivor as he or she shall deem best, during the remainder of the life of such survivor.

"Fourth: At the death of the survivor, after all funeral expenses and debts have been paid, the above property shall be distributed as follows: One thousand dollars ($1,000.00) to be paid to Thomas K. Winsor, our grandson, when he shall become of age. Five hundred dollars ($500.00) shall be paid to Jessie Rolls, our daughter-in-law. The balance

and residue to be divided equally among the surviving children of John Rolls.

"Fifth: All personal effects of either of us, at the time of the death of either of us, to be distributed among the surviving children of John Rolls."

The will declares itself to be joint as well as several. The probate court has determined that the property thereby devised was community property. The joint and several will, so far as it purported to be the will of Leah Rolls, was denied probate because of the execution of the later will revoking the first. It is not claimed that Leah Rolls was wanting in testamentary capacity or that her will does not conform fully to all legal requirements. The grounds of objection are that she agreed and contracted with her husband not to execute a will that would in anywise change the disposition of the property made by the conjoint will. [3] Whatever there may be of merit in this claim we are satisfied that the question cannot be litigated in a probate court but that relief in such cases must be sought in a court of equity. [4] The remedy of a person injured by the violation of a contract to make testamentary provision for another must be pursued in a court of equity and not in a court of probate. Courts of equity will interfere in the administration of estates where the powers of the courts of probate and their modes of procedure preclude them from doing complete justice and then only for the purpose of rendering indispensable aid to courts of probate, remitting their decrees to that court to be carried into effect. (3 Redfield on the Law of Wills, sec. 20, p. 305.) The case of *Monsen* v. *Monsen,* 174 Cal. 97 [162 Pac. 90], was a suit in equity to enforce an alleged contract by which the decedent had agreed that the plaintiff should receive and inherit a child's share of the property which decedent might leave. It was there said: "The action is of a type familiar in this court, and illustrated by a line of decisions beginning with *Owens* v. *McNally,* 113 Cal. 444 [33 L. R. A. 369, 45 Pac. 710]. As was said in that case, 'there has been from a very early date a general concurrence among the authorities upon the proposition that a man may make a valid contract binding himself to dispose of his property in a particular way by last will and testament, and a court of equity will enforce such an agreement specifically by treat-

ing the heirs as trustees and compelling them to convey the property in accordance with the terms of the contract.' Without referring to the numerous decisions in other jurisdictions, we make note of the cases in which the rule, as thus declared, has been recognized here. (*McCabe* v. *Healy*, 138 Cal. 81 [70 Pac. 1008]; *Baumann* v. *Kusian*, 164 Cal. 582 [44 L. R. A. (N. S.) 756, 129 Pac. 986]; *Rogers* v. *Schlotterback*, 167 Cal. 35 [138 Pac. 728]; *Blanc* v. *Connor*, 167 Cal. 719 [141 Pac. 217].)'' To this list may be added *Osborn* v. *Hoyt*, 181 Cal. 336 [184 Pac. 854]; *Estate of Ross*, 180 Cal. 651 [182 Pac. 752]; *Estate of Ross*, 185 Cal. 8 [195 Pac. 674]; *Roy* v. *Pos*, 183 Cal. 359 [191 Pac. 542]; *Steinberger* v. *Young*, 175 Cal. 81 [165 Pac. 432].)

Schouler on Wills, Executors and Administrators, sixth edition, volume 1, section 718, page 817, thus comments on the unfriendly spirit with which mutual or conjoint wills were regarded by the common law and spiritual courts of England and by our earlier American cases:

''When these mutual or conjoint wills first came up in practice, the common law and spiritual courts of England pronounced against them. A mutual or conjoint will, it was said, is unknown to the testamentary law of this country. These courts saw, doubtless, that to give the contract under which such wills were made a practical operation as mutually intended was beyond their own jurisdiction; and regarding the instrument simply as a will the irrevocable nature of such a writing interposed to their minds a strong ground of objection. The same unfavorable position is taken by some of our earlier American cases, on the theory that they could not be revocable and that it was a necessary characteristic of a will that it be revocable.

''But the later and better opinion, in both England and the United States, treats the conjoint or mutual will as capable of probate, provided it has been executed with all the statute formalities requisite for other wills, and has not been revoked by some later instrument. The real point of decision by Sir John Nicholl in *Hobson* v. *Blackburn* (the leading case adverse to such wills), was that such an instrument, though jointly executed, could not be set up in probate against the later will of one of the parties which revokes his share of the mutual disposition; in other words it only denied the theory that joint wills were irrevocable, in the

strict testamentary sense, unless by the joint or mutual concurrence of the testators. Joint dispositions of property, under a testamentary instrument, are, therefore, though irrevocable in equity as a compact, revocable as a will by either testator in the usual manner so far as relates to his own disposition. But, on the other hand, if either testator dies without revoking his disposition, the will may be admitted to probate as his last and separate will, on proof of due execution as in other cases, notwithstanding some one else executed and disposed of property by the same instrument. Hence a conjoint or mutual will, is not necessarily invalid, even when viewed for probate merely and in the simple sense of a testament. That the will happens to be made in conformity to some agreement, or imports on its face a mutuality of testamentary purpose, and a compact not to revoke without a joint assent, does not defeat its character as a will.''

Mr. Schouler further observes that the law of mutual wills is still in a somewhat confused state, regarded as a doctrine of general jurisprudence. It was doubtless because of this confused condition that the legislature of our state relieved the subject of all uncertainty and confusion by the enactment of section 1279 of the Civil Code. We know of no other state which has a similar section. [5] Whoever enters into a contract with another to execute a conjoint or mutual will does so with notice given by the statute itself that such a will is subject to revocation.

In Woerner's American Law of Administration, third edition, section 37, page 74, it is said: '' . . . The doctrine announced by Jarman in the later editions seems, therefore, incontrovertible on principle, and is sanctioned by the current of English and American decisions. It asserts the revocability of joint and mutual wills as testamentary dispositions of property, and therefore entitled to probate as such, to be consistent with their irrevocability as contracts, and therefore enforceable in equity if broken by the revocation of the testamentary disposition. Accordingly, if by two mutual wills, or in a joint will, two testators will their respective estates to the survivor of them without further testamentary disposition, the will of the one who first dies (which is the joint will) is entitled to probate, and the survivor may then dispose of the property devised at leisure,

for the will has fully accomplished its office, and made the property his.''

[6] Joint dispositions of property under a testamentary instrument, as stated by the law text-writers and supported by many decisions, are, therefore, though irrevocable in equity as a compact, revocable as a will by either testator in the usual manner so far as relates to his own disposition. We have no doubt that the probate court made the only distribution of the property that the law would permit it to make. Every case to which we have been cited, or which has fallen under our observation in our examination of the subject, in which the relief here sought has been granted, has been a suit in equity. (See, also, 40 Cyc., pp. 2116, 2117.) Every will under our statute being subject to revocation by the testator, the remedy to enforce a contractual obligation or right such as here sought to be enforced must therefore be found in a court of equity. Whether or not the appellants ought to prevail in a suit in equity under the peculiar facts of the case before us, we express no opinion.

The order and decree appealed from are affirmed.

Lawlor, J., Lennon, J., Richards, J., Waste, J., Shenk, J., and Myers, C. J., concurred.