[Civ. No. 19212. First Dist., Div. Two. Mar. 20, 1961.]

NOEL ALOCCO, Respondent, v. ANN FOUCHE, Appellant.

J. Elwood Andresen for Appellant.

Herman W. Mintz, John A. Gunning, James Giller and David A. Himmelman for Respondent.

KAUFMAN, P. J.—This is an appeal from a judgment quieting respondent's title to an undivided one-half interest in certain real property held under a deed of gift by the appellant. On appeal, it is argued that the evidence does not support the findings and that the trial court erred in the admission of certain evidence and in its rulings on appellant's affirmative defenses. There is no merit in any of these arguments.

The record reveals the following: The appellant, Ann Fouche, and the respondent, Noel Alocco, are brother and sister and the heirs at law of their parents, Maria and Camillo Alocco. In 1948, Maria and Camillo made and executed a joint and mutual will which contained the following provision: "We, CAMILLO ALOCCO and MARIA ALOCCO, husband and wife . . . do each mutually, in consideration of the other making his will, and of the provisions made herein, in each other's behalf, make this our joint and mutual Will and Testament and agree that the same cannot be changed or varied by either, without the consent in writing of the other. . ."

The will further provided that upon the death of either spouse, all property owned by them at the time of their death was to go to the survivor, and upon the death of the survivor, the property was to be divided equally between the two children. Camillo died on March 27, 1952. The joint and mutual will was duly admitted to probate and Maria appointed as executrix thereof. On April 24, 1952, the court in the probate proceedings terminated the interest of Camillo Alocco, deceased, in and to the real property standing in the name of Maria and Camillo as joint tenants [Parcel 2]; on December 2, 1952, the court made and entered its decree of distribution, whereby the remaining portion of the real property of Maria and Camillo [Parcel 1], together with the balance of the estate, was distributed to Maria Alocco, pursuant to the terms and provisions of the joint and mutual will.

At the time of her father's death, the appellant and her family lived with Maria at the family home. In December 1952, Maria asked the respondent to live there also. Maria got along very well with him. The appellant and Maria quarreled often and bitterly. In August 1953, Maria asked the appellant

to leave the premises and hired a lawyer to evict her as she would not go voluntarily. Maria also filed a complaint against the appellant, accusing her of taking things from the premises. Thereafter, in violation of the provision of the joint will, Maria on August 24, 1953, executed a will leaving all of her property to the respondent, and a power of attorney authorizing the respondent to borrow money on her property. Maria made certain improvements on the property; she obtained a personal loan for $750, and then increased it to $2,000 and secured it by a promissory note and deed of trust on the property. Maria had a stroke and was bedridden for several months thereafter. The respondent employed extra help to take care of her.

In the early part of 1954, Maria wanted to visit her brother, Mr. Musso, in Connecticut, to urge him to come and live with her on her property. She bought a car and the respondent under the above mentioned power of attorney increased the mortgages on the property to $4,000 in order to pay for the trip. Maria made the trip with the respondent and his family. In June 1954, the appellant went to the office of attorney Block to demand an accounting from the respondent and received one which was satisfactory except for items of $1,000 for the trip to Connecticut, $750 which he had borrowed from Maria and a further sum of $300 for Maria's clothes and food.

In the latter part of June, apparently at the urging of her sister-in-law, Beatrice Caristi, Maria went to attorney Block, for the purpose of making a new will. Mr. Block drew a new will leaving the property to the appellant and respondent, share and share alike. Beatrice explained the will to Maria in Italian and Maria executed it on July 1, 1954. After this time, Maria went to live with Beatrice who charged her $100 a month to take care of her. Thereafter, the appellant told Maria that she would charge her only $50 a month and promised to be good to her. Maria went to live with the appellant on these terms. The appellant testified that Maria wanted her to take care of the property and use the income to take care of her for the rest of her life. The value of the property was about $40,000 and the income approximately $290 per month. Thereafter, on October 18, 1954, the appellant went to a lawyer's office with Maria, and Maria executed a deed of gift, conveying all of her property to the appellant. No gift tax return was filed at this time nor delivery of the deed made, and the appellant testified that she considered the property as

still belonging to Maria until Maria's death when it would become her own absolutely.

In October, 1956, Beatrice visited Maria at the appellant's home. Maria indicated that she was not happy and wanted to live on her own property with her brother, and asked Beatrice to write to him. Mr. Musso arrived in November, 1956, and went to the appellant's home with Beatrice, who began to discuss the arrangements for carrying out Maria's wishes. A heated argument started during which the appellant claimed to be the owner of the property in question under the deed of gift. Maria repeatedly denied the appellant's ownership and stated that the property was still her own. The dispute raged for several days and all attempts to settle it were unsuccessful. Maria became ill and was hospitalized. Appellant removed her from the hospital after a few days, and would not permit Beatrice or anyone to see or talk to Maria. At one time, the appellant told Beatrice that Maria had gone to Italy, and would not let Beatrice's husband into the house.

Thereafter, on November 9, 1956, Beatrice instituted an action [No. 277634] to set aside the deed on grounds of fraud and undue influence and also filed a petition for guardianship of Maria. The sheriff was unable to find Maria to serve the papers on her and a subsequent attempt at service was also unsuccessful. Finally, the papers were served on appellant's attorneys and a conference was arranged for December 17, 1956, at the Alameda County Courthouse. Beatrice's attorney was allowed to talk to Maria, but Beatrice was not permitted to do so.

While this matter was pending, Maria died on July 9, 1957. Thereafter, the respondent was substituted as plaintiff in Beatrice's action [No. 277634], and filed an action [No. 287432], on the contract in the joint and mutual will for quasi-specific performance for his half of the real property. The appellant set up the affirmative defenses of unclean hands and estoppel due to the probate court's distribution of the estate of Camillo to Maria without restrictions. The two actions were consolidated for trial.

The trial court found the material facts as stated above, and further found that the appellant occupied a confidential and fiduciary relationship to Maria, that the appellant took advantage of this relationship and obtained a deed of gift by the exercise of undue influence over Maria; that at the time of the execution of the deed of gift, Maria did not intend to convey the said real property to the appellant nor to divest

herself of her interest therein; that Maria did not comprehend the nature of the document she was signing and did not know whether it was a will or a deed because the legal effect of signing such a document was apparently not explained to her and she did not have the mental ability to comprehend the nature or legal effect of her act; likewise, the appellant understood that Maria did not intend to convey the title to said real property to her but understood that it was in the nature of an attempted testamentary disposition of her property to the appellant.

The court further found that the effect of the said joint and mutual will was both testamentary and contractual, and that the said contract and agreement in the joint and mutual will was fair and reasonable and adequately supported by good and sufficient consideration; that all of the real property acquired by Maria and Camillo was community property; that under the joint and mutual will, the balance of the estate of Camillo was devised and bequeathed to Maria outright to be used by her for her support and maintenance during her life under the terms of the contract in the joint and mutual will, and upon her death the remainder was to be divided equally between the respondent and the appellant, share and share alike; that Maria was in good faith required not to alienate or make a testamentary disposition of the property in violation of the terms of the contract contained in the said joint and mutual will, which she attempted to do by making the said deed of gift of the said real property to appellant; that under said agreement the respondent was entitled to an undivided one-half interest in the real property and that the appellant by reason of the deed of gift held an undivided one-half interest in the real property as trustee for the respondent and must account to him for one-half of the rents, issues and profits thereof from the date of the death of Maria, and that the respondent's title should be quieted.

The court also found against the appellant on both of her affirmative defenses, and that in order to settle the dispute between the parties, the property should be sold and the proceeds divided between them, and entered judgment accordingly.

The first argument on appeal is that the evidence does not support the findings. We cannot agree.　When a finding of fact is attacked on the ground of insufficiency of the evidence, the power of an appellate court begins and ends with the determination as to whether there is any sub-

stantial evidence, contradicted or uncontradicted, which will support the finding. (*Grainger* v. *Antoyan,* 48 Cal.2d 805, 807 [313 P.2d 848].) The evidence is uncontroverted that Maria was severely ill, had only a second-grade education in Italy, knew nothing of business affairs, was forgetful, and generally was not very bright; after her stroke in 1953, she was much worse and even more forgetful; she had the mentality of a 9-year-old child. She was also possessed of a violent temper which caused her to alternate in her affections toward her children and fed the flames of various family disputes mentioned above. Her deceased husband was apparently aware of her shortcomings and the joint and mutual will was executed to eliminate any incentive for quarreling. There was also uncontroverted evidence that at the time of the execution of the deed of gift, Maria reposed trust and confidence in the appellant who collected the rents from the real property and had access to Maria's bank account; that the appellant was active in the preparation, execution and recording of the deed of gift and paid no consideration for it. Under these circumstances, appellant had the burden of overcoming the presumption of undue influence. (*Rieger* v. *Rich,* 163 Cal. App.2d 651 [329 P.2d 770]; *Faulkner* v. *Beatty,* 161 Cal. App.2d 547 [327 P.2d 41]; *Sparks* v. *Sparks,* 101 Cal.App.2d 129 [225 P.2d 238]; *Campbell* v. *Genshlea,* 180 Cal. 213, 224 [180 P. 336].) This she has not done. There is no question that the evidence amply sustains the finding that the deed of gift was obtained by the appellant by the exercise of undue influence over Maria and in violation of the contract contained in the joint and mutual will, and that there was no valid and effective delivery of the deed to the appellant.

 Appellant next argues that there is no evidence to support the trial court's finding of an alleged agreement between Maria and Camillo that their property was to be divided between the appellant and the respondent. The agreement was in the joint and mutual will, and the authorities in this state are quite definite that the effect of such a document is both testamentary and contractual; that the testamentary provisions may be revoked by either party prior to the death of the other, but after the death of the other and the acceptance of benefits under the provisions thereof by the survivor, the survivor may not make a valid testamentary disposition of the property in violation of the contract. (*Lich* v. *Carlin,* 184 Cal.App. 128 [7 Cal.Rptr. 555]; *Van Houten* v. *Whitaker,* 169 Cal.App.2d 510 [337 P.2d 900]; *Scherb* v. *Nelson,*

155 Cal.App.2d 184 [317 P.2d 164]; *Brown* v. *Superior Court,* 34 Cal.2d 559 [212 P.2d 878]; *Notten* v. *Mensing,* 3 Cal.2d 469 [45 P.2d 198]; *Sonnicksen* v. *Sonnicksen,* 45 Cal. App.2d 46 [113 P.2d 495]; *Rolls* v. *Allen,* 204 Cal. 604 [269 P. 450]; *Estate of Rolls,* 193 Cal. 594 [226 P. 608].)

 Appellant next argues that there is no evidence to indicate that Parcel 2 was community property of Maria and Camillo as this parcel was acquired in 1924 and title taken in joint tenancy. When Beatrice testified that this parcel was acquired during the marriage, appellant's counsel objected. The court in ruling on the objection indicated that there was no question that it was community property. Appellant's counsel made no further objection. There is no question that the court's ruling was proper. While the general rule is that the taking of title as joint tenants is tantamount to a binding agreement that the same should not be held as community property (*Schindler* v. *Schindler,* 126 Cal.App.2d 597 [272 P.2d 566]), it has long been established that the character of property thus held may be changed by an executed oral agreement between the parties. (*Woods* v. *Security-First Nat. Bank,* 46 Cal.2d 697 [299 P.2d 657].) The agreement may be express or implied (*Long* v. *Long,* 88 Cal.App.2d 544 [199 P.2d 47]), and the change in status may be shown by the nature of the transaction or appear from the surrounding circumstances (*James* v. *Pawsey,* 162 Cal.App.2d 740 [328 P.2d 1023].) Here, the record adequately supports the finding that the property was community. Whatever may have been the form of the title to Parcel 2, the property was acquired with community funds and the presumption of section 164 of the Civil Code applies. Furthermore, the subsequent mutual will evidenced that they would treat the whole as community property (*Brewer* v. *Simpson,* 53 Cal.2d 567, 584-585 [349 P.2d 289]; *Lich* v. *Carlin, supra; Van Houten* v. *Whitaker, supra.*)

Appellant next argues that the evidence does not sustain the trial court's finding on her special defense of unclean hands as she is entitled to an accounting from the respondent for the period of time from August 1953 to July 1, 1954, when he was handling Maria's affairs. The evidence indicates that this matter was instigated by the appellant and Beatrice and subsequently dropped by Maria. The trial court properly ruled that apparently an accounting had been had and the matter was not gone into any further.

■ Appellant further argues that the court erroneously admitted the testimony of witnesses about their conversations with Maria before and after the execution of the deed to her. The court clearly indicated that the testimony was admissible for the limited purpose of showing Maria's mental capacity and condition was being admitted subject to a motion to strike and that counsel would have ample opportunity to argue the point and file briefs.

■ Such self-serving declarations are admissible to show the state of mind of the grantor, or donor, or testator at the time of execution of an instrument, his susceptibility to influence and relation to those around him and the beneficiaries. (*American Trust Co.* v. *Fitzmaurice*, 131 Cal.App.2d 382 [280 P.2d 545]; *Cox* v. *Schnerr*, 172 Cal. 371 [156 P. 509]; *Kelly* v. *Bank of America*, 112 Cal.App.2d 388 [246 P.2d 92, 34 A.L.R.2d 578]; *Pailhe* v. *Pailhe*, 113 Cal.App.2d 53 [247 P.2d 838]; *Piercy* v. *Piercy*, 18 Cal.App. 751 [124 P. 561].) " ' ". . . when the intention or state of mind of the alleged donor is involved, evidence of declarations made by him before or after the transaction is admissible though the declarations were not made in the presence of the adverse party. [Citing cases.]" ' " (*Pailhe* v. *Pailhe, supra,* at p. 63.)

■ Appellant's counsel did not ask for a ruling on his motion. ■ The failure of a court to formally rule on evidence received subject to objection is without prejudice if the objections were untenable and the court finds in accordance with the evidence. (*Clopton* v. *Clopton*, 162 Cal. 27 [121 P. 720]; Witkin, California Evidence, § 718, p. 748.)

■ The final argument on appeal is that the trial court erroneously ruled on her affirmative defense of estoppel. Appellant argues that the probate decree distributing the property to Maria free from any restrictions is conclusive of respondent's rights. It is well settled, however, that jurisdiction over contracts to make a particular disposition of property by will rests in equity and not in probate (*Brown* v. *Superior Court*, 34 Cal.2d 559, 560 [212 P.2d 878]).

No prejudicial error appearing, the judgment is hereby affirmed.

Draper, J., and Shoemaker, J., concurred.