[No. 12882. In Bank. — March 28, 1890.]

J. H. GLIDE, Appellant, *v.* THOMAS DWYER et al.,
Respondents.

PLEADING — DEMURRER — CONSTRUCTION AGAINST PLEADER — ADMISSIONS
OF DEMURRER — CONCLUSIONS OF LAW. — When the plaintiff stands on
the sufficiency of his pleading, as against a demurrer pointing out the
particulars wherein it is alleged to be insufficient, the rule that the
pleading must be construed most strongly against the pleader clearly
applies; and in so construing it, the pleading must be taken together as
a whole. All the allegations of fact not inconsistent with other allega-
tions in the same count must be taken as true upon demurrer; but

the pleader's conclusions from the facts are not admitted to be correct. The proper deductions from the admitted facts must be drawn by the court.

BILL OF REVIEW — SETTING ASIDE FORECLOSURE DECREE — INSUFFICIENT AVERMENTS AS TO PLAINTIFF'S TITLE. — In a bill in equity, in the nature of a bill of review, to set aside a decree of foreclosure of a mortgage or deed of trust, given to secure the sum of $80,000 to the holders of any and all of 3,300 promissory notes, to be issued in four different series, payable at certain specified dates, an allegation that not more than 1,440 notes were issued — that is to say, only 360 notes of each of said several series — is not a sufficient averment that any notes were issued, or that any of them were issued before maturity, or before the decree of foreclosure; and an allegation that plaintiff is (on the day of the filing of the complaint, nearly four years after the maturity of the last of the series) the holder of certain of said notes must be taken as an averment that his title accrued at that time, and not before. Such bill of review states no facts sufficient to entitle plaintiff to attack the decree of foreclosure.

ID. — FAILURE TO ALLEGE CONSIDERATION — PRESUMPTION AS TO PLAINTIFF'S TITLE. — Such complaint not alleging that plaintiff paid any consideration for the mortgage notes of which he alleges himself to be owner and holder at the time of the commencement of the action, he must be deemed to be an assignee without consideration after judgment of foreclosure and sale, and cannot avail himself of the remedy by bill in equity to assail the foreclosure decree. (Per PATERSON, J., and MC-FARLAND, J., concurring.)

ID. — FORECLOSURE OF MORTGAGE BY TRUSTEES — PRIVITY OF BENEFICIARIES — CONCLUSIVENESS OF DECREE — FRAUD — PRESUMPTION OF NOTICE — INTERVENTION. — The foreclosure and sale of the mortgaged premises by trustees, who hold the mortgage in trust to secure the holders of any or all of certain promissory notes secured thereby, is a proceeding expressly authorized by statute, and is matter of public record, of which the holder of each note is bound to take notice, and by which he is concluded as a privy to the action. Each beneficiary must be presumed to have had full notice, both of the pendency of the action, and of all facts which appear, upon the face of the proceedings, to indicate fraud or collusion, and cannot urge such facts as ground for a bill of review to set aside the decree. Having notice of the action, it was his right and duty to appear therein to protect his rights.

ID. — INSUFFICIENT SHOWING OF FRAUD. — *Held,* that the facts averred in the complaint in this case do not indicate fraud or collusion in the foreclosure proceedings attacked. (Per FOX, J., and SHARPSTEIN, J., concurring.)

TRUSTS — ALLOWANCE TO TRUSTEES FOR EXPENDITURES — PAYMENT OF ENCUMBRANCE — LIEN. — Trustees are entitled to reimbursement out of the trust property for all moneys paid out and expended under the trust for the benefit of all the beneficiaries, for the purpose of relieving the trust property of an encumbrance; and have a lien upon the whole of the trust property for such reimbursement, which cannot be so limited in law or in equity as to be a lien upon a moiety only of the property.

APPEAL from a judgment of the Superior Court of Sacramento County.

The facts are stated in the opinion of the court.

*Add. C. Hinkson*, and *A. P. Catlin*, for Appellant.

*J. H. McKune*, and *Beatty & Denson*, for Respondents.

Fox, J. — This is a bill in equity, in the nature of a bill of review, brought to set aside a decree of foreclosure, and proceedings subsequently had thereunder, on the alleged ground of fraud. Defendants demurred to the complaint, that the same did not state facts sufficient to constitute a cause of action, or to entitle the plaintiff to relief, and specified many particulars wherein it was insufficient, among others, that as to many of the allegations the plaintiff was barred by lapse of time and laches. The demurrer was sustained, the plaintiff declined to amend, and judgment was entered for the defendants, from which plaintiff appeals.

This is a case where the rule that a pleading must be construed most strongly against the pleader clearly applies; but coming up as it does, on demurrer, all the allegations of fact therein, not inconsistent with other allegations in the same count, must be taken as true. The deductions to be drawn from them are for the court, and it does not follow that such as are drawn by the pleader are admitted to be correct.

From the allegations of the complaint it appears that on the fifteenth day of April, 1880, the defendants H. T. Holmes and William Gwynn made and executed to the defendants Frank Miller and Daniel Flint, as trustees, their certain mortgage, covering 2,437.38 acres of land, in Lisbon District, Yolo County, in this state, to hold the same in trust as security for the sum of eighty thousand dollars, to the holders of any and all of certain promissory notes in said mortgage described, to wit:

thirty-two hundred in number for twenty-five dollars each, with interest thereon, at the rate of eight per cent per annum, divided into four series, severally marked and known as series "A," "B," "C," and "D," with eight hundred notes in each series. All the notes were to be in the same form, except that those of series A were to be payable on or before the fifteenth day of April, 1881; those of series B on or before the fifteenth day of April, 1882; those of series C on or before the fifteenth day of April, 1883; and those of series D on or before the fifteenth day of April, 1884. All were, or were to be, signed "H. T. Holmes & Co.," and made payable to "William Gwynn or bearer."

The said H. T. Holmes and William Gwynn were partners, doing business under the firm name of H. T. Holmes & Co.

There is no averment that all, or in fact any, of the said $80,000 series of notes were ever issued. There is an averment, upon information and belief, that "of the said 3,200 promissory notes, *not more than* 1,440 were issued,—that is to say, there were only issued 360 notes of each of said several series, making an aggregate of $36,000." According to the well-settled rules of construction, we have here an entire failure of allegation that any of the notes were ever issued, with an affirmative allegation putting a limit upon the number, if any, that were issued. This is followed by an averment that "said notes so issued were by . . . . said trustees delivered to said Holmes and Gwynn, who, before the same matured, used them, in whole or in part, in the payment of their debts and liabilities, and in discharging the claims and demands of their creditors." In another portion of the complaint it is averred that the purpose of the parties to the mortgage was to enable Holmes and Gwynn to pay off their debts, etc., "and that said promissory notes were received by said Holmes and Gwynn, and used by them for said purpose, *and other purposes.*"

The complaint must be construed as a whole. So construing it, the averment last quoted must not be held to refer to the whole eighty thousand dollars of said notes, but only to such of them as were actually issued. Without any direct averment showing that any were ever issued, there is a limitation placed upon the amount, if any were so issued, and no averment is made from which the fact could be found that any were issued before their maturity, or before the trust created by the mortgage was closed by operation of law, under the decree of foreclosure hereinafter mentioned, except a few that seem to have been in the hands of the defendant McCarty before such foreclosure, and which will be hereafter referred to.

There is an averment in the complaint that on the day of the filing thereof,—April 11, 1888,—nearly four years after maturity of the last of the series, the plaintiff *is* the holder of certain of said notes, and of each of the four series thereof, which are due and unpaid, with interest thereon from the fifteenth day of April, 1880, the day of their date. There is no averment as to when or from whom he received them. Assuming that they were ever executed, all that the complaint shows is, that they were in the hands of Holmes and Gwynn, their makers, until they passed to plaintiff. So long as they remained in the hands of their makers, they were unissued, and were not notes secured by this mortgage. Under every rule of construction of pleadings, we are bound to assume that they passed from the hands of the makers to this plaintiff on the day of the filing of this complaint, and not before. On that day, and for at least fifteen months before that time, if in the hands of the makers, they were mere waste paper, so far as the security of this mortgage was concerned, for the mortgage had already been foreclosed, and the trust under it had ceased. They could not acquire new life by being transferred to plaintiff, and he could not at that time have acquired any rights under them greater than that held by the person from whom

he received them, whoever that might have been. Of the
thirty-six thousand dollars, which he declares was the
limit of the notes issued, he claims that at the date of
filing his complaint he is the owner and holder of $17,825,
nearly equally divided between the several series, but he
does not claim that he or the person from whom he re-
ceived them held them before maturity, or before the
foreclosure of the mortgage by which he alleges that they
were secured. It is, therefore, apparent that he has not
alleged, in this regard, facts sufficient to entitle him to
attack that foreclosure, or any of the proceedings anterior
thereto.

The complaint further shows that 846.26 acres of the
land described in the mortgage hereinbefore mentioned
was at the time subject to a prior mortgage, made March
28, 1879, by said William Gwynn to William Russell, to
secure the payment of a promissory note of even date,
made by said Gwynn to said Russell, with interest
thereon at the rate of ten per cent per annum. This
note matured two years after its date. It is averred
that one half the principal and interest of this note had
been paid prior to the execution of the $80,000 mortgage,
but it is not stated when or by whom, and as militating
against that averment, and inconsistent with it, it is
further shown by the complaint that at or about the
time of the execution of the $80,000 mortgage, Russell
made an assignment of his mortgage to the National
Gold Bank of D. O. Mills & Co., of which bank it is
alleged said Miller was cashier and manager, which
bank agreed to assign the same to the trustees upon
payment of $3,500 and interest, and at the same time
the trustees gave to Russell a written agreement to de-
liver to him $4,200 of "the proposed" trust-mortgage
notes when received, in full satisfaction of the balance
of his claim under the mortgage. It will be borne in
mind that the Russell mortgage was not yet due, and
that these two sums amount to just the principal of said

mortgage, with the then accrued interest thereon. The law presumes that when the bank received the assignment, it paid a consideration therefor. (Code Civ. Proc., sec. 1963, subd. 39.) It also presumes that in dealing with that mortgage, the ordinary course of business was followed. (Code Civ. Proc., sec. 1963, subd. 20.) From these two declared presumptions of the law, this additional presumption follows: That no part of the note secured by that mortgage had been paid at that time,— it being before maturity; that upon surrendering it Russell demanded and received in money and notes the full amount then accrued in his favor under it, $7,700; as he accepted the agreement of the trustees for the delivery of the $4,200 in notes, and the bank only agreed to assign to the trustees upon the payment to it of $3,500 with interest, and that was the balance represented by the mortgage, presumably that was the amount which the bank paid and Russell received for it. Stripped of mere invective, this was all consistent with honesty and fair dealing, and with the purpose for which the $80,000 mortgage was made,— that of facilitating the settlement of the affairs of Holmes and Gwynn.

It is further alleged in this connection that Miller subsequently acquired control of this mortgage, and had it foreclosed, in the name of another person, but in his own interest, and upon the sale thereof under foreclosure had the property bid in, and the title taken in the name of his wife, and that all this was in fraud of the holders of the trust-mortgage notes.

We can conceive it possible, and even quite probable, that upon the maturity of that mortgage, held as it was by a national bank, of which Miller was cashier and manager, he was compelled to take it up, and as it does not appear that he ever received a dollar of trust funds with which to do it, that he had to do it from his own funds. If so, he was entitled to be protected, and to protect himself, for the advances which he was com-

pelled to make to preserve the trust property. The method of doing it may not have been the wisest, under the circumstances, that could have been adopted. But whether good or bad, the plaintiff has failed to show that he has any ground to complain of it: 1. Because he has failed to show that he or his assignor was the holder of any notes, or had any interest, under the trust mortgage, or as a creditor of Holmes and Gwynn; 2. Because the entire transaction, including the foreclosure and sale, was a matter of public record, of which he was bound to take notice, and of which he is conclusively presumed to have had knowledge, and was concluded more than three years before the commencement of this action; 3. If there was any fraud or error in that foreclosure, or in the sale under it, or in the acquiring of the title by Miller's wife, or by Miller in the name of his wife, it was all corrected upon the foreclosure of the trust mortgage, which was concluded fifteen months before the commencement of this action, and in which the sale under the former mortgage was set aside, and the property subjected to foreclosure in the latter case, — all of which the complaint alleges was done with the consent of Miller, acting as the executor of the will of his wife, then deceased. Whether with his consent or not, he has taken no exception to said last decree, nor any appeal therefrom.

It is further alleged, that on the 3d of March, 1883, the defendant McCarty commenced a suit against the defendants Gwynn, Holmes, Miller, and Flint, and against one Wilson, the person who is alleged to have held the assignment of the other mortgage for Miller, to recover judgment against Gwynn and Holmes upon eighteen of said trust-mortgage promissory notes, amounting to $450, with interest thereon, and for a decree of foreclosure and sale of sufficient of said mortgaged premises to satisfy the same, and that on the ninth day of April, 1885, judgment and decree was entered, in accordance with the prayer of said complaint.

Further, that on the fifth day of July, 1884, the defendants Flint and Miller commenced an action against Holmes, Gwynn, Wilson, and McCarty, to foreclose said eighty-thousand-dollar mortgage, alleging that McCarty and Wilson had or claimed some interest in the mortgaged premises, which was subsequent and subordinate to the lien of said mortgage; that in that action McCarty appeared and answered, and filed a cross-complaint, in which he claimed to be the holder of forty-five of said trust-mortgage notes, and set up all the facts about the Russell mortgage and Miller's connection therewith, the foreclosure thereof and sale thereunder, and claimed that such foreclosure and sale was in fraud of the rights of the holders of the trust-mortgage notes; that Wilson did not appear, and was never served with summons; that Sarah E. Miller, wife of Frank Miller, intervened, setting up her title; that she afterward died, pending the action, and Frank Miller, as the executor of her will, was substituted as such intervenor in her stead; that afterward an order was made, with the consent of all the parties, J. H. McKune, Esq., appearing for McCarty, and Beatty and Denson for all the other parties, consolidating the two foreclosure cases; that the parties then, other than Holmes and Gwynn, with fraudulent intent, procured an order to be entered in the McCarty foreclosure suit, setting aside the decree which had been entered therein; and that on the same day, " all the parties to said suit (the consolidated foreclosure suit), in the further prosecution of the fraudulent designs herein stated, procured a final decree in said action to be made and entered, of which the following is a copy "; and then follows a copy of the decree.

It does not show upon its face that it was a consent decree, but declares that the case was tried in open court, all the parties thereto appearing by counsel, and was tried and submitted upon the pleadings and proofs adduced.   It then proceeds to decree and order the sale of

all the land covered by the trust mortgage, thus setting aside or disregarding the foreclosure and sale under the Russell mortgage, and directed the disposition of the fund arising therefrom. It provided that any party to the action might become a purchaser at the sale, and that the funds arising therefrom should be distributed as follows: 1. To the payment of the costs and expenses of sale; 2. To the payment of the costs of suit; 3. To the payment to Frank Miller, executor of the will of Sarah Edna Miller, of the sum of $6,395.50; 4. To the payment of the sum of $500 to Flint and Miller for their services and commissions in executing the trust; 5 and 6. To the payment of counsel fees to the several counsel of McCarty and the trustees, of sums amounting in the aggregate to $1,000; 7. To McCarty the sum of $3,041.50, "in full satisfaction and payment of the notes held by him against said Gwynn and Holmes"; and 8. That any further sum that might be realized be brought into court, to be distributed to the holders of notes issued under the trust mortgage, as they should make their respective rights appear. The entire decree seems to have been within the equitable jurisdiction of the court. If there was error in it, or in any of the awards made by it, it was open to correction upon application of any party interested, by motion in the court below, and then by appeal. It does not appear that any motion to correct it was ever made in the court below, no appeal was ever taken, and more than the full time allowed by law for appeal expired before this action was brought.

That action was brought and prosecuted by and in the name of the trustees, for the benefit of the beneficiaries under the trust, whosoever they might be, as the statute expressly provides may be done. (Code Civ. Proc., sec. 369.) There is no pretense that the plaintiff or his assignor was without notice of the pendency of that action, or of any of the acts which are alleged to have been fraudulent or collusive. The presumption is, that he

had such notice. Though not named as a party to the record, he had a right, assuming that he (plaintiff or his assignor) was a party in interest, to have himself made a party to the record by intervention or motion at any stage of the proceedings. But he preferred to let the whole matter be conducted by his trustees. Though not a party to the record, he was privy, if he was the holder of any of these trust-mortgage notes, and is estopped by that decree unless there was fraud of which he had no notice, or was not by law charged with notice; and it is not pretended in the complaint that such was the fact. (See Freeman on Judgments, sec. 181; Pomeroy's Remedies and Remedial Rights, sec. 400; *Robbins* v. *City of Chicago*, 4 Wall. 547; *Castle* v. *Noyes*, 14 N. Y. 632.)

But the fallacy of this charge of fraud, if the plaintiff was or is in position entitling him to be heard on such a charge, is sharply illustrated by reference to one point made and insisted upon in connection with this part of the case. It is insisted upon, as perhaps the strongest and most perfect badge of fraud in this case, that the plaintiff Miller caused and procured this decree to be so framed and entered as to give the intervenor, Miller, a lien upon the entire mortgaged premises for the amount awarded in his favor,—and to be paid out of the proceeds of the sale of the entire premises, instead of upon the part thereof covered by the Russell mortgage only, and to be paid out of the proceeds of the sale of that part. As we have already said, it does not appear from the record that Miller had anything to do with the framing of this decree. Whether he did or not, there was neither error nor fraud in that part of it which is so insisted to have been fraudulent. This award was not made in satisfaction of the Russell mortgage; on the contrary, the lien of the Russell mortgage was ignored. According to the facts set up in the complaint, that mortgage had been satisfied and extinguished. The court evidently found, and the facts set up in this com-

plaint would support such a finding, that the moneys
claimed by the intervenor were moneys paid out and
expended under the trust, and for the benefit of all the
beneficiaries thereunder, to relieve the trust property of
this prior encumbrance. For the moneys so expended,
the party was entitled to a return, with interest and
costs necessarily incurred in that behalf, and to have
the same returned out of the whole trust fund. It was
as much a first lien on that trust property as any other
expense legitimately incurred by the trustees, and could
not, in law or in equity, be so limited as to be a lien
upon a moiety only of the trust property. The amount
to be allowed on account of that expenditure was for the
court to determine, and in doing it the court seems to
have fixed the amount at only about two thirds the sum
claimed and allowed in the former suit for the foreclos-
ure of the Russell mortgage.

One further fact, insisted upon as one tending to show
fraud, remains to be considered. At the sale had un-
der the foreclosure of this trust mortgage, the defend-
ant McCarty bid in the property in one parcel at the
sum of eleven thousand five hundred dollars. This
occurred March 5, 1887. He afterward assigned an in-
terest in it to the defendant Dwyer, and in due course
the sheriff issued his deed to McCarty and Dwyer. It is
alleged upon information and belief that the property
was then worth thirty-five thousand dollars, and that the
property was allowed by the parties to the action other
than Gwynn and Holmes to be struck off to McCarty for
this smaller sum, for the purpose of defrauding the other
holders of the trust-mortgage notes, but it is not alleged
that either the plaintiff or his assignor was one of the
holders of such notes, or was injured thereby. We are
aware of no law which compels judgment creditors to
bid upon property, upon which they have a lien, any
higher than they please. The sale was at public auc-
tion, under a decree of court, and presumably conducted

according to law.   There is no allegation that it was not
first offered in separate parcels, or that any of these de-
fendants did any act which prevented, or tended to pre-
vent, any other person from bidding at the sale any sum
that he pleased for the whole, or any part of the land.
Plaintiff says he is *now* willing to bid for the prop-
erty a sum sufficient to cover such awards as the court
may upon a new trial make in favor of the other parties
to the action, and the amount due him upon the notes
which he claims to hold.   He had the opportunity of do-
ing so at that sale, and if he was then the holder of these
notes, or any of them, it was his interest to see that the
property brought all that it was worth.

It thus appears to us, upon a careful examination of
all the allegations of fact contained in this complaint, as
distinguished from mere invective and conclusion, that
it fails to show a case of fraud in which a court of equity
would be justified in interposing to set aside this decree
of foreclosure, which has been allowed by not only the
parties to the record, but by all the parties in interest, to
become final.   It also fails to show that the plaintiff or
his assignor was or is a party who could or can main-
tain such an action,—1. Because it fails to show that he
or his assignor is or was the holder of any note secured
by said mortgage issued before the mortgage was fore-
closed and the trust extinguished; 2. If it be assumed
that the notes now claimed by him were outstanding at the
time of the foreclosure, then he was privy to the action,
and is estopped by the decree, on the authorities and
for the reasons already stated.   It follows that the de-
murrer was properly sustained, and the judgment must
be affirmed.

So ordered.

SHARPSTEIN, J., concurred.

PATERSON, J., concurring.—I concur.   It must be pre-
sumed, in the absence of objection to the contrary, that

plaintiff and his assignors had full notice of the pendency of the action, and of all the facts now relied on to show fraud and collusion. Having such notice, it was their duty to appear in the action to protect their rights. (Freeman on Judgments, sec. 181; Pomeroy's Remedies and Remedial Rights, sec. 400; *Robbins* v. *City of Chicago,* 4 Wall. 567; *Castle* v. *Noyes,* 14 N. Y. 332.) Furthermore, under the allegations of the complaint, plaintiff must be deemed to be an assignee without consideration after judgment of foreclosure and sale. He cannot, therefore, avail himself of this remedy. (*Thompson* v. *Maxwell,* 95 U. S. 397.; 2 Smith's Chancery Practice, 49.) For these reasons, I concur in the affirmance of the judgment,

McFARLAND, J.—I concur in the judgment, for the reasons stated in the opinion of Mr. Justice Paterson.