[Civ. No. 6760.    Fourth Dist.    Oct. 2, 1962.]

MARTIN J. KNEGO et al., Plaintiffs and Respondents, v. HORACE JAMES GROVER, Defendant and Appellant.

MARTIN J. KNEGO, as Administrator With the Will Annexed, etc., Plaintiff and Respondent, v. HORACE JAMES GROVER, Defendant and Appellant.

(Consolidated Cases.)

138

Leedy & Kimball, Daniel C. Leedy and John W. Kimball for Defendant and Appellant.

Kolts & Kolts and Donald Kolts for Plaintiffs and Respondents.

COUGHLIN, J.—The beneficiaries named in the will of a deceased wife, and the administrator with the will annexed of her estate, who are the plaintiffs and respondents above named, ▌ brought separate actions against her surviving husband, who is the defendant and appellant herein, claiming certain property in his possession to be community property subject to the provisions of her will. These actions were consolidated for trial; resulted in judgments in favor of the plaintiffs, and gave rise to the appeals now before this court.

Christine Grover, the deceased wife, and Horace Grover, the surviving husband, were married April 8, 1944. The wife, at the time of marriage, owned a hotel, located on nine lots in Block 17 of Solano Beach and, thereafter, with her husband, acquired other property which they appeared to hold as joint tenants. On March 18, 1958, they executed mutual wills, together with a written agreement that neither would revoke or change the same without the written consent of the other. Each of these wills contained the following:

''I declare that all of the property, both real and personal, in which I have any right, title, interest or estate, is community property of myself and my said'' spouse, naming the latter.

The wife, from her ''community one-half interest'' bequeathed $3,000 to a sister, and all of the remainder of her

"estate" to her three adult children in equal shares; declared that her husband should retain his one-half interest in their community property as his separate property; provided that in the event he should predecease her the foregoing dispositive provisions of her will should apply to the whole of her estate including that which she may have received from him; and nominated her husband as executor. The husband devised and bequeathed all of the property in which he had any right, title, interest or estate to his wife; provided that in the event she should predecease him that his entire estate should be devised and bequeathed to her sister and children, incorporating the dispositive provisions with respect thereto contained in his wife's will; and nominated her as executrix.

At the time of the execution of the foregoing wills, record title to the hotel appeared in the name of the wife as her separate property; two unimproved lots were owned by the husband and wife, who held title under deeds conveying the same to them as joint tenants; and a bank account, as well as an automobile, also stood in their names as joint tenants.

A little less than three months after executing these wills a sale of one of the unimproved lots to people named Kelley resulted in a net cash payment of $8,871.42, which was deposited in the joint bank account, and the execution of a note by the purchasers, in the sum of $22,500, payable to the husband and wife as joint tenants, together with a deed of trust on the purchased property securing payment of that note, in which they, as joint tenants, were named as beneficiaries. Shortly thereafter a sale of the hotel to people named Grybas and Childs resulted in a net cash payment of $15,969.76, which was deposited in the joint bank account, and the execution of a note by the purchasers, in the sum of $75,000, payable to the husband and wife as joint tenants, together with a deed of trust on the purchased property securing the payment of that note, in which they, as joint tenants, were named beneficiaries.

Subsequently a home was built on the remaining unimproved lot. Proceeds from the bank account were used for this purpose.

The wife died on March 31, 1959. The husband did not probate her will. Instead he retained possession of all of the remaining foregoing property, which included a $746 balance in the joint bank account, the Kelley note upon which there was unpaid $11,500, the Grybas-Childs note upon which there was unpaid the sum of $73,037.52, the home place, and the

automobile. Thereafter he instituted joint tenancy termination proceedings with respect to these items.

Following the wife's death a series of conversations took place between the husband and individual beneficiaries under her will, the gist of which amounted to statements by him that he knew his wife wanted her children to receive something from her estate; that all of the property was joint tenancy property and now belonged to him; that the will in question was invalid; that, nevertheless, he intended to carry out his wife's wishes to the best of his ability; that he had been under considerable expense and did not know when they would get anything; but that anything they received would be a gift on his part. Subsequently he paid them varying sums of money as "gifts."

Three months following his wife's death, i.e., on July 6, 1959, the husband married; five months later, i. e., on December 2, 1959, he borrowed $19,000, securing repayment of this loan by a deed of trust on the home place; and gave the amount thus acquired to his second wife. On one occasion after his second marriage, the husband told one of the children that this marriage would "make no difference to the family, that he would still carry out Christine's [his wife's] wishes, as far as the estate was concerned."

Shortly after completion of the $19,000 loan, the foregoing actions were commenced. The trial court found, in substance, that the bank account, the promissory notes, the home place, and the automobile were community property; entered judgment which determined, among other things, that the interest of the deceased wife in that property was subject to probate under her will; and decreed recovery by the administrator with the will annexed from the husband of the sum of $30,922.96, as reimbursement for the alleged conversion by the latter of funds and property belonging to his wife's estate.

The husband appeals and contends: (1) that there is no evidence to support the finding that the property in question was community property of the parties at the time of the wife's death; (2) that the court erred in the admission of evidence respecting this issue; and (3) that the evidence is insufficient to support the award of damages.

### Sufficiency of Evidence re Finding of Community Property

The husband concedes that the property owned by him and his wife on March 18, 1958, being the date of the execution of

their mutual wills, became community property, but claims that the property which they thereafter acquired was held by them as joint tenants.

The agreement, understanding or intention of a husband and wife respecting the status of their property, as to whether it is separate, community, or joint tenancy, is determinative of that status (*Gudelj* v. *Gudelj,* 41 Cal.2d 202, 212 [259 P.2d 656]; *Socol* v. *King,* 36 Cal.2d 342, 345 [223 P.2d 627]; *LaMar* v. *LaMar,* 30 Cal.2d 898, 903 [186 P.2d 678]); their agreement may be expressed or implied (*Alocco* v. *Fouche,* 190 Cal.App.2d 244, 251 [11 Cal.Rptr. 818]; *Van Houten* v. *Whitaker,* 169 Cal.App.2d 510, 517 [337 P.2d 900]), written or oral (*Socol* v. *King, supra,* 36 Cal.2d 342, 346; *Huber* v. *Huber,* 27 Cal.2d 784, 788 [167 P.2d 708]; *McDonald* v. *Morley,* 15 Cal.2d 409, 412 [101 P.2d 690, 129 A.L.R. 810]); their understanding or intention may be inferred from their conduct or declarations (*Socol* v. *King, supra,* 36 Cal.2d 342, 346; *Cash* v. *Cash,* 110 Cal.App.2d 534, 538 [243 P.2d 115]); and, in the absence of any showing to the contrary, the status declared by the instrument through which they acquired title is controlling. The latter result follows from a rebuttable presumption that the parties intend to hold their property in the manner indicated in the instrument which evidences their ownership. (*Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 212; *Guerin* v. *Guerin,* 152 Cal.App.2d 696, 709 [313 P.2d 902]; *Cash* v. *Cash, supra,* 110 Cal.App.2d 534, 538.) Ordinarily, whether this presumption has been rebutted is a question of fact. (*Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 212.) However, it may not be overcome solely by evidence as to the source of the funds used to acquire the property (*Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 212; *Socol* v. *King, supra,* 36 Cal.2d 342, 346; *Guerin* v. *Guerin, supra,* 152 Cal.App.2d 696, 710; *Cash* v. *Cash, supra,* 110 Cal.App.2d 534, 538); or by evidence of a secret intention of one of the parties. (*Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 212; *Socol* v. *King, supra,* 36 Cal.2d 342, 346; *Guerin* v. *Guerin, supra,* 152 Cal.App.2d 696, 710.)

The husband contends that there is no evidence to support a finding that he or his wife agreed, understood or intended that the Grybas-Childs or Kelly promissory notes and deeds of trust were community property. On appeal, if there is any substantial evidence in the case, including any inferences reasonably deducible from the facts established thereby,

142

which supports a questioned finding, it will be sustained. (*Grainger* v. *Antoyan*, 48 Cal.2d 805, 807 [313 P.2d 848]; *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].) ▮ The facts and circumstances in the instant case fully support the finding of the trial court in the premises. When Mr. and Mrs. Grover executed the joint wills they intended that all of their property should be community property. Their declarations in these wills clearly manifested this intention. (*Brewer* v. *Simpson*, 53 Cal.2d 567, 585 [349 P.2d 289]; *Alocco* v. *Fouche*, *supra*, 190 Cal.App.2d 244, 251.) From the total evidence the court was entitled to conclude that this intention extended to the proceeds of this property as evidenced by the promissory notes and deeds of trust executed in connection with the subsequent sales thereof. The very nature of the transaction was such as to indicate an intention that one-half of the property owned by the parties at the time of the wife's death, should she predecease her husband, would be devised to her children. Such an understanding supports an inference that they did not intend that the property thereafter acquired by a joint tenancy instrument should have joint tenancy status. (See *McDonald* v. *Morley*, *supra*, 15 Cal.2d 409, 412; *Lich* v. *Carlin*, 184 Cal.App.2d 128, 137 [7 Cal.Rptr. 555]; *Van Houten* v. *Whitaker*, *supra*, 169 Cal.App.2d 510, 517-518.) In addition, the cash receipts from the subject sales, as well as subsequent payments upon these notes, were deposited in the bank account which the parties had declared was their community property bank account. Funds from this account were used to build a home upon a lot which they had declared was community property. Such conduct supports a conclusion that they considered that the status of the proceeds from the sale of their property, whether evidenced by cash or promissory notes, was the same as the status of their bank account and the property upon which they built their home. ▮ Furthermore, as the wife's will would be effective only if she died possessed of a community interest in the property which is the subject of these actions, the statement by the husband, after her death, that he knew her wishes in the matter were that her children "should get something," and that he intended to carry them out, support an inference that such knowledge was based upon an understanding between him and his wife that the property which they owned at the time of her death would be community.

▮ At the time the husband and wife sought legal advice concerning their wills, the attorney who prepared the same

explained the differences in status between separate, community and joint tenancy property. At this time they stated "that it was their desire to consider everything that they owned community property." Thereafter no discussion was had with respect to the status of any of the property owned by them. The appellant contends that in view of this advice the trial court was required to infer that the wife did not intend that the Grybas-Childs and Kelley promissory notes, which were made payable to herself and to her husband as joint tenants, should be community property. The testimony concerning the attorney's advice in the premises is subject to conflicting inferences; does not require the inferences for which the husband contends; and the rejection of the latter inference by the trial court may not be interfered with on appeal.

Whether an inference shall be drawn from established facts is a matter exclusively within the discretion of the trial court, and its determination is conclusive on appeal. (*Blank v. Coffin,* 20 Cal.2d 457, 461 [126 P.2d 868].) Furthermore, the testimony respecting the attorney's advice and conduct in the premises supports the conclusion that the parties considered all of their property to be community property regardless of the type of deed or agreement by which it came to them or was created; that the attorney considered it to be thus; that they must have been advised accordingly; and that they were entitled to conclude that the designation of its status in instruments of transfer or of creation was not controlling.

Where two or more inferences reasonably may be deduced from the facts, a reviewing court is without authority to substitute its deductions for those of the trial court. (*Estate of Schultz,* 54 Cal.2d 513, 518 [6 Cal.Rptr. 281, 353 P.2d 921] ; *Primm* v. *Primm,* 46 Cal.2d 690, 694 [299 P.2d 231].)

### Alleged Error in Admission of Evidence

Over objection, the husband testified in substance that at all times he considered the bank account and the home place to be community property. He contends that this testimony was inadmissible insofar as it declared his intention with respect to the property subsequent to the making of the mutual wills because such intention was not communicated to his wife. His contention is without merit. The subject testimony constituted an admission against interest supporting an inference that his belief in the premises must have been founded upon the existence of a mutual understanding between the parties.

## SUFFICIENCY OF THE EVIDENCE TO SUSTAIN JUDGMENT RE DAMAGES

The court found that the husband converted the interest of his wife's estate in the payments made upon the promissory notes after her death, in the joint bank account, and in the automobile; that the value of this interest was $12,376.47; that, by deed of trust, he placed an encumbrance upon the home place in the total sum of $19,000 of which there was unpaid the sum of $18,546.49; and that the administrator with the will annexed should recover from the husband the total of these sums, i.e., $30,922.96; judgment was entered accordingly.

The husband contends that pending administration of his wife's estate he had the right to consume the community personal property in payment of his debts; to impose an encumbrance upon the community real property securing payment of the loan to him; and to give away the proceeds of this loan. He cites the provisions of sections 202 and 203 of the Probate Code in support of this contention. The former thereof provides that:

"Community property passing from the control of the husband, either by reason of his death or by virtue of testamentary disposition by the wife, is subject to his debts and to administration . . . but in the event of such testamentary disposition by the wife, the husband, pending administration, shall retain the same power to sell, manage and deal with the community personal property as he had in her lifetime; and his possession and control of the community property shall not be transferred to the personal representative of the wife except to the extent necessary to carry her will into effect."

The latter section provides: "After 40 days from the death of the wife, the surviving husband shall have full power to sell, lease, mortgage or otherwise deal with and dispose of the community real property, unless a notice is recorded in the county in which the property is situated to the effect that an interest in the property is claimed by another under the wife's will."

The code sections in question must be interpreted as a part of the total law governing the wife's right to make a testamentary disposition of her share in the community property; defining the extent of that share for testamentary purposes; prescribing a procedure governing the time and method by which it may be subjected to administration for such purposes; retaining in the husband a form of management of the

community personal property essential to the use of his interest therein; also retaining in him the control and possession of all of the community property, restricted only to the extent necessary to carry into effect the provisions of his wife's will, for the evident purpose of enabling him to preserve in the fullest measure commensurate with testamentary disposition both his and his wife's interests therein; providing a method whereby the beneficiaries under a wife's will may give notice of their claim to an interest in community real property under control of the husband; and protecting those who deal with him concerning the same where such notice has not been given.

The evidence shows that the husband spent the note receipts and the bank account funds in payment of medical expenses incurred for services rendered his wife during her lifetime, of expenses incurred for her funeral and burial, and of debts contracted after her death, including his living expenses, inheritance taxes, legal fees for services rendered in connection with the joint tenancy termination proceedings, taxes on real property, and repairs thereto. The evidence does not show that the taxes and repairs in question were levied or made upon the community property.

Heretofore it has been determined that the medical, funeral and burial expenses incurred on behalf of a deceased wife are debts of the husband for which the community property is liable. (*Odone* v. *Marzocchi*, 34 Cal.2d 431, 439 [211 P.2d 297, 212 P.2d 233, 17 A.L.R.2d 1109].) It is reasonable to conclude that such property should be liable for other debts of the husband for which the community property would have been liable during the wife's lifetime. (See 10 Cal.Jur.2d 778-779 regarding such debts.) On the other hand, the debts of the husband referred to in section 202 do not include those incurred by him after his wife's death which have no relationship to their community property. (See *Johnston* v. *San Francisco Sav. Union*, 75 Cal. 134, 144-145 [16 P. 753, 7 Am.St.Rep. 129].) If the statute were interpreted otherwise, the husband could render for naught any testamentary disposition by his wife of her share in the community property, which is contrary to the evident purpose of the law.

As noted, section 202 further provides that, pending probate of a wife's will and the incident administration of her estate, a husband shall have "the same *power* to sell, manage and deal with the community personal property as he had in her lifetime; and his possession and control of the community property shall not be transferred to the personal representative

of the wife except to the extent necessary to carry her will into effect." (Italics ours.) However, the subject section does not purport to give the husband the right to consume his wife's share of the community property, which was subject to her testamentary disposition, by giving it away or by using it in the payment of debts incurred by him after her death which have no relationship to the maintenance or preservation of that property. The obvious purpose of the statute is to permit the husband to retain possession of the community property except insofar as it is necessary to carry his wife's will into effect. Consistent with this purpose he may be required to account to her personal representative for her share.

The wife's share of the community property which is subject to her testamentary disposition is a one-half interest in that part thereof in existence at the time of her death which remains after payment of her husband's debts. (*Odone* v. *Marzocchi, supra,* 34 Cal.2d 431, 440; *Estate of Coffee,* 19 Cal.2d 248, 252 [120 P.2d 661].) Possession and control of this share remains with the husband pending administration except to the extent necessary to carry the wife's will into effect. (Prob. Code, § 202.) During this time he has certain powers with respect thereto which enable him to change the form but not the status thereof. Community property does not change its character by reason of a change in its form. (*Boyd* v. *Oser,* 23 Cal.2d 613, 623 [145 P.2d 312]; *Estate of Jolly,* 196 Cal. 547, 556 [238 P. 353].) Furthermore, the rents, issues and profits therefrom partake of its community character. (*Boyd* v. *Oser, supra,* 23 Cal.2d 613, 621.)

Under applicable equitable principles, while the community property is in possession of the husband he has the right and duty to preserve and maintain the same, and should be credited with any expenditures incurred in so doing. His status in the premises is analogous to that of a trustee authorized to manage and deal with trust property. (Generally see Civ. Code, § 2273; *Neet* v. *Holmes,* 25 Cal.2d 447, 466 [154 P.2d 854]; *Ochoa* v. *McCush,* 213 Cal. 426, 431 [2 P.2d 357]; *In re Beisel,* 110 Cal. 267, 275, 277 [40 P. 961, 42 P. 819]; *Glide* v. *Dwyer,* 83 Cal. 477, 487-488 [23 P.2d 706]; *Bixby* v. *Hotchkis,* 58 Cal.App.2d 445, 452 [136 P.2d 597]; 49 Cal. Jur.2d 134-138.) In the case at bar, among other things, the plaintiffs sought a determination of the extent of the wife's share in community property which was subject to administration. Any accounting ordered for that purpose

should have been directed only to a determination respecting the extent of the wife's interest in the property in possession or under control of her husband, which was subject to her testamentary disposition to the extent heretofore outlined. On the other hand, the court had authority to direct the defendant-husband to pay over to the administrator of his wife's estate that part of the note payments and the bank account funds in question which were subject to administration, as aforesaid, if it was necessary that the administrator should have possession thereof to carry the wife's will into effect. (Prob. Code, § 202.) To the extent that the judgment herein failed to credit the husband for the payments made by him upon the medical and funeral expenses incurred on behalf of his wife, it was in error. As there is no showing that the payments for taxes or repairs concerned the home place, which was the only community real property in his possession, the refusal to give credit for these items was proper, although a further hearing in the matter may establish the propriety thereof. Likewise, the refusal to give credit for the other debts incurred by the husband after his wife's death was in accord with the rules heretofore noted, and was not error.

That part of the judgment which decreed recovery of an amount equal to the balance unpaid on the note and deed of trust against the home place, i.e., the sum of $18,546.49, is unsound. The court declared that a one-half interest in that property was subject to the wife's testamentary disposition. To further require the husband to pay into his wife's estate the amount of the outstanding encumbrance against the property might result in a double recovery. Should he pay the obligation in question, for which he is personally liable, and for which his one-half interest in the property as well as his wife's one-half interest therein is security, the wife's estate would receive her one-half interest clear of any encumbrances plus $18,546.49, which obviously would be unfair. A proper disposition of the issue at hand requires a consideration of many facets, as to some of which the evidence has not been developed, and this court must leave to the trial court the burden of adopting and applying a proper formula and procedure which will do justice in accord with the facts established by the evidence and the law in the premises.

The defendant-husband contends that he is entitled to retain the $19,000 which he received from the loan in question; was authorized to place an encumbrance upon his wife's com-

munity interest in the home securing repayment of that loan; and is not required to account for any part thereof. This contention is based upon the provisions of section 203 of the Probate Code which provide that, after 40 days following the death of the wife, the husband shall have "full power" to mortgage or otherwise deal with and dispose of the community real property unless a notice is recorded to the effect that another person claims an interest in such property under the wife's will. No such notice was recorded in this case. The power of the defendant-husband to execute the subject deed of trust is not questioned. However, the code provisions relied upon neither confer upon him the right to give away the proceeds of a loan thus obtained; authorize him to change the status thereof from community to separate; declare that he shall not be accountable for the same; nor enable him thus to divest his wife's estate of her community share. ■■■■ The proceeds of a loan secured by community property are community funds. These funds, being personal property, may be subject to the provisions of section 202 of the Probate Code conferring upon the husband the "same power" to deal therewith as he had in his wife's lifetime. However, this power is conferred by section 172 of the Civil Code which provides that "he cannot make a gift of such community personal property." The contention of the defendant to the contrary is wholly without merit. (See *Harris* v. *Harris*, 57 Cal.2d 367, 370 [19 Cal.Rptr. 793, 369 P.2d 481].)

No claim of error is asserted with respect to the award for a one-half interest in the value of the automobile, and no consideration is given this phase of the case.

That part of the judgment in favor of the administrator with the will annexed awarding damages is reversed with instructions to take such further proceedings respecting the issues raised by the defendant's collection and use of all of the payments made on the promissory notes since his wife's death, by his use of the whole of the bank account, and by his use of the proceeds of the loan against the home place, as may be proper, and thereupon to enter a judgment on these issues in accord with the facts as found and the law in the premises. All other parts of both judgments are affirmed. Neither party shall recover costs on appeal.

Griffin, P. J., and Shepard, J., concurred.