[Civ. No. 34999. Second Dist., Div. Two. Dec. 8, 1970.]

MINNIE CHUBA, Individually and as Administratrix With the Will Annexed, etc., Plaintiff and Respondent, v.
GERALD L. FISHBEIN, Defendant and Appellant.

COUNSEL

Irmas, Simke, Rutter, Green, Lasher & Hecht, David Manning Chodos, Stuart A. Simke and Spiegelman & Raich for Defendant and Appellant.

George C. Woods and Charles F. Howard for Plaintiff and Respondent.

OPINION

**COMPTON, J.**—On April 28, 1961, June Fishbein, defendant Gerald Fishbein's wife of eight years died testate. June's Will, dated March 28, 1961, and which was admitted to probate on October 29, 1963, after a contest by

defendant, bequeathed all personal clothing, furs, jewelry, household furnishings and furniture to her mother, plaintiff Minnie Chuba, and further directed that " '[m]y community property is to be divided equally between my husband and my mother.' "

On April 20, 1964, plaintiff individually and as administratrix with the Will annexed, filed an action against defendant seeking a declaration of community status of property held by defendant, the imposition of a constructive trust, and damages for conversion of decedent's interest in the community property.

Judgment was for plaintiff in the sum of $40,451.02, plus interest from October 29, 1963, the date of plaintiff's appointment as administratrix. Defendant appeals.

The property alleged by plaintiff, and found by the court, to be community property and the subject of conversion by defendant is as follows:

(1) 50 shares capital stock, Hickey-Kahan Grading Co., valued at $23,765;

(2) 50 shares of capital stock, Hickey-Kahan Paving Co., Inc., valued at $61,203;

(3) 2,700 shares capital stock H-K Rental Corp., valued at $48,180;

(4) Savings and loan account balance $2,656.10;

(5) Real property known as Valley Vista property, valued at $21,000;

(6) Limited partnership interest in Sabra Investment valued at $5,000.

The judgment represents one-fourth of the aggregate value of these assets as determined by the court.

A brief description of the acquisition and disposition of each of the items of property is a necessary background for analysis of the trial court's findings.

### THE SHARES OF STOCK

In 1948, defendant was first employed as a laborer by his uncle, Phillip Kahan, who was then a principal in the paving and grading business of Hickey-Kahan. Defendant gradually took more responsible positions with his uncle's company until in 1956 defendant became one of three principals in the Hickey-Kahan Company. In 1956, defendant's uncle retired from his position in the Hickey-Kahan Company and defendant thereafter entered into the paving and grading business under the name of H-K (Hickey-Kahan) Paving and Grading Company. At that time the two companies

were copartnerships. Later that year these partnerships were incorporated into Hickey-Kahan Rental Corporation and Hickey-Kahan Grading and Paving Co., Inc. Finally, in 1957, defendant split Hickey-Kahan Grading and Paving Co., Inc. into two new corporations, Hickey-Kahan Grading Company, Incorporated, and Hickey-Kahan Paving Company, Incorporated. By July 6, 1959, defendant was the sole shareholder in these three corporations.

Defendant continued to operate all three Hickey-Kahan Corporations until 1963, when severe construction problems caused defendant to be unable to complete certain construction contracts. Defendant's construction equipment was thereafter either repossessed or sold at auction. On October 1, 1963, the Secretary of State suspended Hickey-Kahan Rental Company for failure to pay the franchise tax. Hickey-Kahan Grading Company was similarly suspended in May of 1964 and Hickey-Kahan Paving Company was suspended in August of 1965.

### THE REAL PROPERTY

On October 20, 1960, title to real property located on Valley Vista Street in the San Fernando Valley was purchased by Hickey-Kahan Paving Company for future development. The parcel of land was purchased for approximately $52,500 with $15,000 as a down payment. The remainder of the purchase price was secured by a First Trust Deed for $37,500. Although the property was purchased and "owned" by the corporation, title was taken in the name of Richard Greenberg, an employee of Hickey-Kahan Paving Co. Subsequently in 1962 the Valley Vista property was deeded by Greenberg to Security Shelters Corporation upon condition that Security Shelters would (1) complete development of the property and build houses thereon; (2) pay over to Hickey-Kahan Paving the sum of $21,000; and (3) the two corporations would share the net profits of the said development. Arnold Wolpin, who had purchased all outstanding shares in Security Shelters, Inc. and had assumed the agreement, testified that Security Shelters never paid the $21,000 to Hickey-Kahan Paving and that as of the trial no suit for such payment had been filed.

### THE LIMITED PARTNERSHIP

In early 1960, defendant participated in the formation of the Sabra Investment Company. The Sabra Investment Company was a limited partnership in which each limited partner contributed a designated amount of money monthly for the purpose of large financial investments. Defendant paid $1,800 in 1960, and thereafter paid $200 per month throughout 1961 and 1962 and one month into 1963.

In 1963, Mr. Fishbein sold his interest in Sabra Investment Company for $5,800.

### THE SAVINGS AND LOAN ACCOUNT

At the death of his wife, defendant had on deposit in his name with Van Nuys Savings and Loan Association, the sum of $2,656.10. In August of 1961, defendant withdrew $2,500 from said account.

The trial court found that as of June Fishbein's death the above properties were community property. The court further found that "[a]t all times subsequent to the death of said decedent, June Fishbein, defendant Gerald L. Fishbein has asserted and claimed that all of the foregoing described property was his separate property and that neither said decedent, plaintiff, nor decedent's estate owned or was entitled to any interest therein. . . . At all times subsequent to the death of said decedent, defendant . . . has exercised complete dominion and control over all of the foregoing described real and personal property under the claim of ownership thereof as his separate property, has disposed of and caused title to said real property to be transferred and conveyed, has converted all of said personal property to his own use; has at all times failed to account for the same or any part thereof, or the proceeds or consideration for the transfer and conveyance thereof."

The court also found that at all times subsequent to his wife's death, defendant held and controlled the aforesaid properties under a constructive trust for the benefit of his wife's estate, and that at all times subsequent to his wife's death defendant had failed and refused to deliver possession of this community property to plaintiff as administratrix of the decedent's estate.

Defendant's main contentions on appeal are that,

(1) There is no evidence to support a finding that defendant converted any of the property; and that

(2) The court in finding that defendant converted the property at the date of his wife's death and in effect had a duty to account for the value of the assets as of that date is not supported by the evidence for the reason that;

(3) The court failed to take into account the provisions of Probate Code sections 202 and 203; and

(4) The court failed to find on material issues.

On September 11, 1961, defendant's attorney directed a letter to the special administrator of the estate stating among other things that decedent had no community real property and no community interest in any stocks or bonds. The letter indicated that these assertions were based on information provided by defendant.

Defendant concedes that as of the time of the trial in 1968 he had not deposited any assets in the estate for distribution under the will.

It also appears that during probate proceedings held in 1964 defendant asserted that some of the disputed assets were his separate property.

It goes without saying that defendant was obliged, at some point after the will was admitted to probate, to account to the estate for one-fourth of the assets which were determined to be community property.

The record is devoid of any evidence that, prior to the commencement of this action, the defendant was requested to account for or deposit to the estate any of said assets. Nor is there any evidence that the probate proceedings had reached a point where possession of the assets by the administratrix was necessary to carry out the will.

As indicated above the complaint here was filed just six months after the will was admitted to probate.

It is apparent that plaintiff used the device of this lawsuit to simply establish the community status of the assets and the value thereof.

It is also apparent that the court's very generalized findings were, when reduced to their simplest terms, designed to establish the value of the assets for which the defendant was found to be accountable.

■ Respondent concedes that this is the "theory" upon which the case was tried and consequently urges that defendant may not now on appeal resort to the provisions of Probate Code sections 202 and 203. With this contention we disagree.

In rendering a judgment for money damages based on the torts of conversion and breach of trust the court was required as a matter of law to consider the application of Probate Code sections 202 and 203 and to make findings on issues concerning which the findings here are either fatally silent or lacking in evidentiary support.

This case presents a direct confrontation between the provisions of sections 202 and 203 of the Probate Code and the interests of a legatee who is entitled to a portion of the decedent's share of the community assets.

The finding that defendant converted the assets as of the date of death is critical in that it establishes the value of those assets at a time considerably prior to the date when plaintiff was entitled to receive distribution.

■ Conversion is the wrongful exercise of dominion over the personal property of another. (See *Kee* v. *Becker,* 54 Cal.App.2d 466, 470 [129 P.2d 159].)

Conversion involves actual interference with the plaintiff's dominion or ownership rights. (See *Jordan* v. *Talbot,* 55 Cal.2d 597, 610 [12 Cal.Rptr. 488, 361 P.2d 20, 6 A.L.R.3d 161].)

In the instant case the court found that defendant "[a]t all times subsequent to the death of said decedent, . . . has asserted and claimed that all of the [aforementioned property] was his separate property and that neither said decedent, plaintiff, nor decedent's estate owned or was entitled to any interest therein." The court did not specify in what manner defendant *wrongfully* exercised dominion over said properties except to say that defendant at all times "[claimed] ownership thereof as his separate property"; and transferred and conveyed title to said real property; and has at all times "failed to account for the same or any part thereof, . . ."

██ Defendant does not deny that subsequent to his wife's death he exercised dominion and control over said properties. However, he contends that under the authority of sections 202 and 203 of the Probate Code his actions were not wrongful.

Section 202 of the Probate Code provides as follows: "Community property passing from the control of the husband, either by reason of his death or by virtue of testamentary disposition by the wife, is subject to his debts and to administration and disposal under the provisions of Division III of this code; but in the event of such testamentary disposition by the wife, the husband, pending administration, shall retain the same power to sell, manage and deal with the community personal property as he had in her lifetime; and his possession and control of the community property shall not be transferred to the personal representative of the wife except to the extent necessary to carry her will into effect."

Section 203 of the Probate Code provides that "[a]fter 40 days from the death of the wife, the surviving husband shall have full power to sell, lease, mortgage or otherwise deal with and dispose of the community real property, unless a notice is recorded in the county in which the property is situated to the effect that an interest in the property is claimed by another under the wife's will."

There is no evidence that such notice was filed.

"The obvious purpose of the statute is to permit the husband to retain possession of the community property except insofar as it is necessary to carry his wife's will into effect. Consistent with this purpose he *may* be required to account to her personal representative for her share." (Italics added.) (*Knego* v. *Grover,* 208 Cal.App.2d 134, 146 [25 Cal.Rptr. 158].) Thus, the husband has a legal right to possession and control of this share pending

administration of the estate and except to the extent necessary to carry the wife's will into effect.

The record does not support the court's implied finding that defendant's exercise of dominion and control over the said properties was inconsistent with section 202 or section 203 of the Probate Code.

Prior to the wife's death, defendant was the manager of the community property. His dominion and control was not automatically rendered tortious by the death.

The trial court's assessment of interest from the date of the admission of the will to probate is inconsistent with a finding of conversion at a time prior thereto.

■ During the time the surviving husband has control and management of his wife's community property, he may, consistent with section 202 of the Probate Code change the form, though not the status of such property. (*Knego* v. *Grover, supra,* at p. 146.) Community property does not change its character by reason of a change in its form. (*Boyd* v. *Oser,* 23 Cal.2d 613, 623 [145 P.2d 312].) "Furthermore, the rents, issues and profits therefrom partake of its community character." (*Knego* v. *Grover, supra,* at p. 146.) Thus, "[u]nder applicable equitable principles, while the community property is in possession of the husband he has the right and duty to preserve and maintain the same, and should be credited with any expenditures incurred in so doing. His status in the premises is analogous to that of a trustee authorized to manage and deal with trust property. [Citations.]" (*Knego* v. *Grover, supra,* at p. 146; see also Civ. Code, § 2273; *Neet* v. *Holmes,* 25 Cal.2d 447, 466 [154 P.2d 854].)

In the case at bar defendant allowed the three Hickey-Kahan corporations to be suspended. Defendant also sold the Valley Vista property to Security Shelters for $21,000 and Security Shelters' agreement to share profits on the subsequent development of that property. Similarly, defendant sold his interest in Sabra Investment Company for $5,800. Finally, defendant withdrew a sustantial amount from a joint savings account.

■ The court found that defendant had contended that these properties were his separate properties and had in effect denied that plaintiff had any interest therein.

Such an assertion, however, could not render tortious defendant's admittedly legal possession of these assets. To find otherwise would be to thrust surviving husbands onto the horns of an inequitable dilemma. If the husband dares to exercise his right to challenge the community nature of the assets, he loses his right to possess and control such property; for

by so challenging the status of property devised by his wife he renders himself liable to the charge of conversion. Thus, in essence the surviving husband who elects to challenge his wife's assertion of community property prior to administration of her estate become a guarantor of the value of such property.

We are mindful that section 202 of the Probate Code ". . . does not purport to give the husband the right to consume his wife's share of the community property, which was subject to her testamentary disposition, by giving it away or by using it in the payment of debts incurred by him after her death which have no relationship to the maintenance or preservation of that property. . . ." (*Knego* v. *Grover, supra,* at p. 146.)

A surviving spouse who fraudulently disposes of or destroys community assets, who converts them to his own use, or who refuses to turn them over to the personal representative of his deceased wife upon demand and at a time when possession of said assets is necessary to carry out the wife's will, is liable for conversion or for breach of fiduciary duty. (See *Knego* v. *Grover, supra.*)

However, in the instant case there was insufficient evidence upon which to base a finding that defendant breached the duty imposed on him by section 202 of the Probate Code.

The court's findings suffer from a further defect in that the valuation of the decedent's community property interests is inconsistent with the provisions of section 202. Given the court's conclusion that these properties were community in nature and given further the nature of the surviving husband's powers and duties as to such properties, it follows that the valuation of the properties' net worth is to be calculated as of the date of the abuse of such power or a breach of the duty. In other words, the surviving husband must be made to account only for the value of his wife's devised community property which is wasted or disposed of in violation of the fiduciary duties imposed on the husband by section 202 of the Probate Code.

In the instant case the court's valuations in actuality comport neither with a finding of conversion nor with the possible finding of a breach of fiduciary duty.

### THE SHARES OF STOCK AND THE CORPORATE ENTITIES

In May of 1961, defendant formed a new corporation under the name of G. L. Fishbein, Inc., which engaged in the same type of business as the three corporations in question.

Plaintiff contends that this fact coupled with a diminution of the value

of the three corporations supports an inference that defendant deliberately abandoned the latter in order to defeat the plaintiff's claim.

This inference, however, does not establish a conversion of the shares and it is only those shares which are alleged to be community property. The court made no finding that the corporation or its assets were community property.

Defendant's possession of the shares, in which plaintiff's interest at best could constitute only 25 percent of the outstanding stock, is unrelated to his actions as managing officer of the corporations. Although there is no express indication of how the court evaluated the contested shares, it appears inferentially that the court equated the worth of the corporate shares with the net worth of the corporations' assets as of the date of Mrs. Fishbein's death. The defendant was not required at his wife's death to account for such a sum. He was required only to manage and control such property until requested to relinquish such control to the administration of the estate in order to carry the will into effect. (*Knego* v. *Grover, supra,* at p. 146.) Mismanagement of the corporate affairs may render defendant liable for breach of his fiduciary duties as president and controlling shareholder of the corporations in an action by a minority shareholder but not in an action for possession of the shares.

Defendant is not an underwriter or guarantor of the net worth of his corporation simply because he retains management and control over the community property interest in the corporation.

Defendant's corporations were not dissolved until two years after Mrs. Fishbein's death. These corporations did not experience financial difficulty until late 1962. Thus the court's valuation of the worth of the shares based on the net worth of the corporations at the death of Mrs. Fishbein is inconsistent with the provisions of section 202 and is not supported by the evidence.

### THE REAL PROPERTY

The uncontroverted evidence is to the effect that Greenberg held title to the property in trust for the paving corporation rather than Fishbein individually.

The court found that defendant and Greenberg held the property in constructive trust for the benefit of the estate of decedent.

A constructive trust arises from a wrongful acquisition or detention, neither of which is demonstrated by the record here.

Apparently the court's finding in this regard was simply a determination

that the real property was community property and that defendant was under a duty to account for it to the estate.

Significantly the court found that Security Shelters and Arnold Wolpin were bona fide purchasers for value and that they did not conspire with defendant to defraud plaintiff.

The most that can be said about the transaction is that defendant sold the real property and has not been paid therefor.

In light of Probate Code sections 202 and 203 and the court's findings, defendant cannot be burdened with a money judgment for a portion of the sale price. Plaintiff could only be entitled to be subrogated to a portion of defendant's claim against Security Shelters.

The findings suffer a further defect. They do not spell out why the court valued this asset separately instead of including it as an asset of the corporations.

### The Limited Partnership

The sale of the interest in this asset occurred in 1963.

The uncontroverted evidence is that the value of the interest as to the time of death was $2,600. After the death defendant made further capital contributions in the amount of approximately $4,400.

There is no evidence as to what disposition defendant made of the proceeds of the sale in 1963.

The record does not support the finding of conversion at the date of death. We are unable to determine just what act the court found to constitute the conversion or how it arrived at the valuation of $5,000. It follows that if on retrial there is proof of actual conversion and/or a breach of fiduciary duty the court must value plaintiff's interests in the limited partnership as of the date defendant actually converted said property or breached said duty. Based on the record before us neither of these possible tortious acts occurred on the date of Mrs. Fishbein's death.

### The Savings and Loan Account

The withdrawal of the funds occurred August 2, 1961, approximately four months after the death. Other than defendant's testimony that he used the money to pay debts, there is nothing to indicate what happened to that money.

From the trial court's general finding that the conversion occurred at "all times subsequent to the death," we are unable to determine whether

the court found the conversion to have occurred at or after withdrawal of the funds, on the failure to deposit with the estate or on the defendant's assertion that the money was separate property.

Thus we are unable to determine whether or not the court found that the simple withdrawal was itself a conversion. Such a finding of course as noted above would be contrary to law. Furthermore, such a finding is inconsistent with the court's finding of conversion on the date of Mrs. Fishbein's death.

In summary, the evidence is insufficient to support the trial court's finding that defendant converted the assets in question or that defendant held such assets subject to a constructive trust as of the date of decedent's death. Furthermore, the trial court failed to find on issues material to such a determination.

The trial court's valuation of the assets for which defendant was accountable is unsupported by the evidence and is erroneous by virtue of the court's failure to apply sections 202 and 203 of the Probate Code.

As to the corporate assets and the real property, the record is unclear and the findings are deficient on the issue of their status as community property vis-a-vis the plaintiff's claimed interest in the corporate shares.

The judgment is reversed.

Roth, P. J., and Herndon, J., concurred.